IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Cynthia Barnes, | : | Case No. 1:21-cv-578 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Denis McDonough, Secretary of | : | Order Granting Defendant's Motion for |
| Veterans Affairs, | : | Summary Judgment |
| | : | |
| Defendant. | : | |

This matter is before the Court on the Motion for Summary Judgment filed by Denis McDonough, United States Secretary of Veterans Affairs, against Plaintiff Cynthia Barnes. (Doc. 18.) Barnes responded in opposition (Doc. 22), and the Secretary of Veterans Affairs replied (Doc. 23). For the reasons that follow, the Motion for Summary Judgment will be **GRANTED**.

**I.     BACKGROUND**

   **A.  Facts**[1]

Cynthia Barnes began working for the Cincinnati VA Medical Center ("VA") on November 29, 2015 as a Nurse Expeditor in the Transfer Center. As a Nurse Expeditor, Barnes coordinated the transfer of veterans from outside hospitals into the VA. Her tenure lasted until January 29, 2020, when she was removed from her employment due to well-documented,

---

[1] The facts drawn are derived from Defendant's Statement of Proposed Undisputed Facts (Doc. 18-1) filed in support of its Motion for Summary Judgment. Plaintiff did not admit or deny Defendant's Proposed Undisputed Facts as directed by Section III.B.2 of the *Standing Order Regarding Procedures in Civil Cases* of the Hon. Matthew W. McFarland, who presided over this case at the time Defendant's Motion for Summary Judgment was filed, or Section II.F.6.b of the *Standing Order Governing Civil Cases* of the Hon. Jeffery P. Hopkins, to whom this case was transferred after Defendant's Motion for Summary Judgment was filed but prior to Plaintiff's Response. Both have the same substantive requirement that an opponent to summary judgment must admit or deny each proposed fact, assert contrary evidence if denying a fact, and separately file proposed disputed issues of material fact. The Court considers Defendant's Statement of Undisputed Facts (Doc. 18-1) to be admitted. Thus, it draws its facts from this filing unless otherwise noted by citation.

repeated failure to follow supervisory instructions prohibiting her from working additional hours without prior approval.

In May 2019, the Transfer Center, which had been a part of Nursing Management, was moved to Patient Business Services ("PBS"), and Plaintiff's new supervisor became Susan Mickey. From June 1, 2019 to December 2, 2019, the Transfer Center was understaffed. Barnes, therefore, admittedly took it upon herself to frequently work past her "tour of duty," or designated work shift, which ran from 7:30 a.m. to 4:00 p.m. However, PBS employees are not permitted to work past their tour of duty without prior approval from a supervisor. (Mickey Decl., Doc. 17-3 at PageID 474–75.) Barnes's working past her tour of duty without prior approval became a significant issue.

In May 2019, Barnes stayed past her tour of duty three times, each time requesting Mickey to approve the time prior to leaving for the day but after having worked the additional time. Mickey approved the extra time but stated that they needed to find a way to ensure Barnes could finish her work within her tour of duty despite the challenges of not having additional staffing support. (Doc. 16-2 at PageID 277.) Mickey offered to shadow Barnes to help find areas that could be streamlined. (*Id*.) Barnes often declined Mickey's offers of assistance and stayed past her tour of duty instead.

On June 1, 2019, Mickey told Barnes that "no OT/CT will be approved without discussing it with me first." (Doc. 16-2 at PageID 279–280.) But Barnes worked additional hours without prior approval three times from June 5 to June 12, 2019. (Doc. 16-2 at PageID 281–283; Doc. 17-1 at PageID 402–408.) Mickey approved some of this time after the fact but continued to instruct Barnes that she was not permitted to work beyond her tour of duty without prior approval. That same instruction– that Barnes is "not allowed to work overtime without

2

approval from [her] supervisor"–was also given to Barnes by Mickey's supervisor and the PBS Chief, Frank Pennimpede, via email on June 13, 2019. (Doc. 17-4 at PageID 476.) Yet, the same day she received Pennimpede's email, Barnes again worked additional time and then sought approval after the fact. (Doc. 17-1 at PageID 407–408.)

On June 14, 2019, Mickey issued a Written Counseling to Barnes for failing to follow instructions that no overtime or compensatory time was permitted without pre-approval.[2] (Doc. 16-2 at PageID 292–293.) But Barnes worked past her tour of duty or approved additional hours again nine times between July 12 and August 9, 2019. (Doc. 17-1 at PageID 411–431.) On August 15, 2019, Mickey issued a Proposed Reprimand for failure to follow supervisory instructions, because Barnes stayed past her tour of duty on several instances in July 2019 despite repeated instructions from Mickey to refrain from doing so without prior approval. (Doc. 16-2 at PageID 296–297.) On September 6, 2019, the Proposed Reprimand was sustained. (*Id.* at PageID 324–325.)

Barnes worked past her tour of duty eleven more times from August 16 to October 24, 2019. (Doc. 17-1 at PageID 434–449; Doc. 16-2 at PageID 288–289.) On October 24, 2019, Mickey issued a Proposed Suspension for failing to follow supervisory instructions. (Doc. 16-2 at PageID 326–328.) Still undeterred, Barnes again worked past her tour of duty three more times from October 31 to November 13, 2019. (Doc. 17-1 at PageID 451–459.) Barnes's Proposed Suspension was upheld on November 14, 2019. (Doc. 16-2 at PageID 332–333.) Yet,

---

[2] In addition to her insubordination issues, Barnes had a difficult time getting along with her colleagues. On June 16, 2019, her primary colleague in PBS, Robert Good, who was also a Nurse Expeditor, filed a complaint about Barnes requesting that he be removed and reassigned to a new position because he found Barnes so challenging to work with. He described her behavior as condescending, argumentative, and combative. He also stated that Barnes attempted to oversee his work despite not being his supervisor. He noted that Barnes performed tasks beyond the scope of their duties which frequently caused her to work late, a problem he did not have. (Doc. 17-2 at PageID 471–473.)

3

from November 19 to December 13, 2019, Barnes worked past her tour of duty without prior approval four more times. (Doc. 17-1 at PageID 463–470.)

On January 2, 2020, Barnes was issued a Proposed Discharge for failure to follow supervisory instructions; namely, working past her tour of duty without supervisory approval in October, November and December 2019. (Doc. 16-2 at 334–337.) Barnes's Proposed Discharge was upheld on January 24, 2020, and on January 29, 2020, Barnes was removed from employment. (*Id*. at PageID 352–353; Barnes Aff., Doc. 16-2 at PageID 360.)

### B. Procedural History

Barnes filed this federal employment discrimination action on August 3, 2021, which was assigned to the Hon. Matthew W. McFarland at the time of filing. (Doc. 1.) Plaintiff asserts one claim of age discrimination, but that claim includes allegations of discrimination based on age, hostile work environment, and retaliation. The Secretary of Veteran's Affairs filed a Motion for Summary Judgment (Doc. 18), after which this case was transferred to the Hon. Jeffrey P. Hopkins. Barnes filed a Response in Opposition (Doc. 22), and the Secretary of Veteran's Affairs filed a Reply (Doc. 23.) After the Motion became ripe, the case was transferred to the Undersigned on April 3, 2024. For the reasons that follow, Defendant's Motion for Summary Judgment will be **GRANTED**.

### II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663

F.3d 806, 811 (6th Cir. 2011). The evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585–87; *Provenzano*, 663 F.3d at 811.

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). Pursuant to Rule 56(c)(4), "an affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### III.  ANALYSIS

#### A.  Age Discrimination

The Age Discrimination Employment Act ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To set forth a prima facie case of age

5

discrimination using circumstantial evidence, a plaintiff must establish the four elements of the well-known *McDonnell Douglas* test: (1) that she was a member of a protected class (over 40 years old); (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that she was replaced by someone outside of the protected class, was treated less favorably than a similarly-situated individual outside his protected class, or that other circumstances exist that support an inference of discrimination. *House v. Rexam Bev. Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015) (citing *Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*, 508 F. App'x 404, 410–411 (6th Cir. 2012)); *see, e.g.*, *Blizzard v. Marion Tech. College*, 698 F.3d 275, 283 (6th Cir. 2012) (listing "circumstances that support an inference of discrimination" as final factor); *Geiger v. Tower Auto.*, 579 F.3d 614, 622–23 (6th Cir. 2009) (listing "he was replaced by someone outside of the protected class" as the final factor).

If the plaintiff meets her prima facie burden, the burden of production shifts to the employer to provide a legitimate nondiscriminatory reason for her termination from employment. Then the plaintiff must rebut the employer's argument by introducing evidence of pretext. "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). "The three-part test need not be applied rigidly. Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Blizzard*, 698 F.3d at 285 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). "[T]he trier of fact may . . . consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)

6

(internal quotation marks omitted). "[A]t bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Chen*, 580 F.3d at 400 n.4. In an age discrimination case, that requires showing by a preponderance of the evidence that age was the but-for cause of adverse employment action. *Pelcha v. MW Bancorp., Inc.*, 988 F.3d 318, 323–324 (6th Cir. 2012) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–178 (2009)).

      **1. Prima Face Case**

Defendant does not challenge the first, second, or fourth prongs of Plaintiff's prima facie case, but argues that she has not met the third prong of being qualified for the job. "At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 575 (6th Cir. 2003) (emphasis in original). "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 575–576.

Defendant argues that Plaintiff was unqualified because she was consistently unable to complete her work within her tour of duty. As such, she lacked the time management, prioritization, and delegation skills to manage the work of the busy Transfer Center. By contrast, her counterpart, Robert Good, who shared the same duties and supervisor, attested that he rarely had to stay past his tour of duty to complete his daily tasks. (Good Decl., Doc. 17-2 at PageID 471–472.) Defendant also points to evidence that Plaintiff declined Mickey's assistance and then

7

did the work herself, causing her to stay past her tour of duty. In her deposition, Barnes stated that she declined assistance from Mickey because she probably did not trust Mickey and because Plaintiff could do the job herself. (Doc. 16-1 at PageID 210–211.) Defendant argues that a plaintiff must show that she was performing her job to her employer's "satisfaction" to establish she was qualified, but Plaintiff here cannot demonstrate qualification due to her poor time management. *See Thomas v. Hoyt, Brumm & Link, Inc.*, 910 F. Supp. 1280, 1286–1287 (E.D. Mich. 1994).

The Sixth Circuit has held that a court "may not consider the employer's alleged nondiscriminatory reasons for taking an adverse employment action when analyzing the prima face case" as this would "bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Id*. at 574. Here, Defendant argues that Plaintiff was not completing her job duties within the time frame required, not that she was unable to do the job or had the basic underlying credentials required. Defendant relies upon the same argument in support of its nondiscriminatory reason for terminating Plaintiff's employment. Furthermore, Defendant did not cite evidence regarding Plaintiff's objective qualifications for her position aside from her alleged job performance deficiencies. As Plaintiff's job performance is the crux of the dispute, the Court will analyze her performance in evaluating Defendant's stated nondiscriminatory reason for its decision to terminate her employment. The Court will therefore proceed as though Plaintiff has met her prima facie burden.

### 2. Defendant Had a Legitimate, Nondiscriminatory Reason for Terminating Plaintiff's Employment

Defendant asserts that it terminated Plaintiff's employment for insubordination. Insubordination is a well-established, legitimate, nondiscriminatory reason for firing an employee. *Pelcha*, 988 F.3d at 326; *Hibbler v. Reg'l Med. Ctr. at Memphis*, 12 F. App'x 336, 340 (6th Cir. 2001); *Raadschelders v. Columbus State Cmty. Coll.*, 377 F. Supp. 3d 844, 858 (S.D. Ohio 2019) ("The Sixth Circuit has repeatedly held that insubordination may constitute a legitimate, nondiscriminatory reason for adverse action.") (citing *Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013)). Plaintiff was insubordinate by repeatedly refusing to follow her supervisor's instruction that she was not to work beyond her tour of duty without prior approval of that time. By the Court's count, Plaintiff was insubordinate thirty-four times in a seven-month span in 2019 when she worked past her tour of duty without prior approval. Defendant has met its burden to show a legitimate, nondiscriminatory reason for Plaintiff's termination from employment.

### 3. Plaintiff Has Not Met Her Burden to Show Pretext

The burden shifts back to Plaintiff to show that insubordination was only a pretext to conceal that the true motive for her termination from employment was her age. *Pelcha*, 988 F.3d at 326. Pretext can be demonstrated by showing the proffered reason has no basis in fact; the proffered reason did not actually motivate the employment action; or the reasons were insufficient to motivate the employment action. *White*, 533 F.3d at 393. The pretext inquiry is a common-sense question: "did the employer fire the employee for the stated reason or not?" *Blizzard*, 698 F.3d at 285. The record is quite clear Plaintiff was terminated for insubordination,

and Plaintiff has not met her burden to come forward with evidence of Defendant concealing an illegal motive.

Plaintiff's basis for her pretext argument is unclear. The record does not support that her termination from employment had no basis in fact or was insufficient to motivate the decision to terminate her employment. Barnes disagrees with whether she was able to complete her work within her tour of duty and whether Mickey had the best interests of the veterans at heart. However, her disagreements do not demonstrate that her employer's motivations had no basis in fact or were insufficient to motivate the decision to terminate her employment. Plaintiff was counseled numerous times about her employer's requirement that working beyond her tour of duty was not permitted and any additional time required prior approval by her supervisor. Barnes does not dispute that she stayed past her tour of duty numerous times. (Doc. 22 at PageID 543.)

She also has not identified a similarly-situated individual who was treated more favorably by being permitted to work beyond his or her tour of duty without prior approval. "To show pretext on disparate treatment, a plaintiff must provide evidence that 'employees outside the protected class[ ] were not disciplined even though they engaged in substantially identical conduct to that which [the employer] contends motivated its discipline [of the plaintiff].'" *Pelcha*, 988 F.3d at 327 (citing *Miles v. S. Cent. Hum. Res. Agency, Inc.,* 946 sF.3d 883, 893 (6th Cir. 2020)). In examining another employee outside the protected class, the court considers if the employee: (1) "dealt with the same supervisor," (2) was "subject to the same standards," and whether he or she (3) "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*. (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff argues that other employees were granted overtime on the weekends, whereas she was not.  (*See* Doc. 16-2 at PageID 387–388; Barnes Dep., Doc. 16-1 at PageID 251, 163.)  She claims that "other 20 or more of Ms. Mickey's staff were 'granted' overtime on Saturdays or Sundays and Ms. Mickey allowed it.  On the other hand Ms. Barnes had to beg for comp time and was rarely granted it."  (Doc. 22 at PageID 547.)  She asserts that "Mickey's staff included 8 employees in their 30s, and 6 in their forties, 2 in their fifties and only 2 (including Plaintiff) in their 60's."  (*Id.*)  She also claimed that Mickey herself "frequently" worked overtime.  In support of this, she cites her own Affidavit.  (Barnes Aff., Doc. 16-2 at PageID 364.)  Barnes fails to identify who these alleged "other" employees are to establish any basis for comparison to her and whether they are similarly-situated, and she does not demonstrate how her supervisor is similarly-situated to her.  Equally as important, she has not demonstrated that any other similarly situated employees engaged in the same or similar conduct by working overtime *without prior approval*.  The impetus for Plaintiff's discipline was her insubordination by not obtaining prior approval before working overtime, not necessarily her working overtime hours. Finally, Plaintiff's best comparator, Robert Good, who shared the same job title and supervisor, attested that he rarely had to work extra time to complete his job duties.  (Good Decl., Doc. 17-2 at PageID 471–473.)

Plaintiff also suggests pretext exists because she claims she was terminated from employment in close proximity to her pension eligibility date.  But she has not identified any comments referencing her pension date, retirement, or age.  She admitted that no comments were made regarding her age, and she did not cite any evidence suggesting her age is what motivated her employer's decision to end her employment.  (Plaintiff's Response to Interrogatories and

11

Document Requests, Doc. 16-2 at PageID 387.)  This is simply insufficient to draw an inference of pretext of discriminatory animus.

In sum, Plaintiff has not demonstrated that her employer's legitimate, nondiscriminatory reason for terminating her employment for her admitted insubordination was pretext for discrimination because of of her age.

### B. Hostile Work Environment

To make out a hostile work environment claim under the ADEA, Plaintiff must demonstrate: (1) she was 40 years of age or older; (2) she was subjected to harassment, either though words or actions, based on age; (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis in liability on the part of the employer.  *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–835 (6th Cir. 1996).  The third prong is focused upon the harassment being "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id*. at 835 (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)).

Plaintiff has not come forward with record evidence to demonstrate she was subjected to harassment, through words or actions, based on age, let alone that it is "severe" and "pervasive" harassment.  There simply is no record evidence supporting any age-related comments were directed towards her, a fact Plaintiff admits.  (Plaintiff's Response to Interrogatories and Doc. Requests, Doc. 16-2 at PageID 387.)  Rather, the record reflects Plaintiff was disciplined as a result of her insubordination yet continued to work beyond her tour of duty without prior approval of her supervisor.  This claim fails as a matter of law.

### C. Retaliation

Defendant also moved for summary judgment on Plaintiff's retaliation claim, asserting that the claim is barred for failure to exhaust administrative remedies but fails on the merits regardless. Plaintiff's Complaint alleges that Defendant terminated her employment in retaliation for her formal and informal complaints of age discrimination, including her filing an EEOC Charge of Discrimination. Plaintiff did not respond to Defendant's arguments regarding her retaliation claim. A "plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment. *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). *See also Clark v. City of Dublin,* 178 F. App'x 522, 524–25 (6th Cir.2006) (affirming trial court's finding that a party's failure to properly respond to the arguments raised in a motion for summary judgment constituted an abandonment of those claims); *Hicks v. Concorde Career Coll.,* 449 F. App'x 484, 487 (6th Cir. 2011) ("The district court properly declined to consider the merits of this claim because [the plaintiff] failed to address it in either his response to the summary judgment motion or his response to [the defendant's] reply brief); *Conner v. Hardee's Food Sys.,* 65 F. App'x 19, 24–25 (6th Cir. 2003) (finding that the plaintiff's failure to brief issues relating to one of its claims in the district court amounted to an abandonment of that claim). Because Plaintiff failed to respond to Defendant's arguments for summary judgment on this claim, the Court finds she has abandoned it. Accordingly, summary judgment is appropriate on Plaintiff's retaliation claim.

### IV. CONCLUSION

This is straightforward case of insubordination, not discrimination. Plaintiff repeatedly refused to follow her employer's explicit instruction not to work beyond her shift without prior approval. There is no evidence to demonstrate her employer was motivated by discriminatory

13

animus on the basis of age. Defendant's Motion for Summary Judgment is **GRANTED**. This matter shall be terminated from the docket of this Court.

    **IT IS SO ORDERED.**

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court
